ALBERT C. DIXON, Plaintiff, *v.* CARRIE L. DIXON, Defendant.

(Supreme Court, Kings Special Term, June, 1919.)

Service — non-residents — jurisdiction — marriage — when motion to vacate service by publication granted — Code Civ. Pro. § 438(4).

The courts of this state cannot by personal service of process outside the state obtain jurisdiction of a non-resident so as to pronounce against her a valid judgment annulling a foreign

marriage. In actions to annul a marriage the common law rules as to jurisdiction being dependent upon residence and service of process, obtain.

Subdivision 4 of section 438 of the Code of Civil Procedure authorizing an order of publication in an action for the annulment of a marriage, does not extend the scope of the general jurisdictional provisions of the Code relative to such an action.

Where in an action against a non-resident to annul a marriage the defendant, appearing specially, moves to vacate an order for the service of the summons by publication and to set aside personal service on her without the state pursuant thereto, and it is shown that the parties were married in the District of Columbia, which was the matrimonial domicile, and that defendant there obtained a separation from plaintiff, the motion will be granted and the service set aside.

After the decree of separation defendant's domicile did not follow her husband when he removed to New York state.

MOTION to vacate an order for service of summons.

John F. Couch and Harry B. Finn, in support of motion.

Julius L. Mitchell, in opposition.

BENEDICT, J. This is a motion by the defendant, appearing specially, to vacate an order for the service of the summons upon her by publication, and to set aside the service of the summons upon her made in pursuance thereof personally without the state.

The action is for the annulment of the marriage between plaintiff and defendant on the ground of defendant's alleged physical incapacity. It appears from the papers submitted that the parties were married in the District of Columbia on May 19, 1914. After living together in Washington for some time they separated, it being claimed on the part of the defendant that the plaintiff abandoned her. On February 18, 1916, in the Supreme Court of the District

of Columbia the defendant herein was granted a decree of divorce *"a mensa et thoro" or "* a legal separation " from the plaintiff, and he was directed to pay her certain arrears of alimony and the sum of $400 in lieu of permanent alimony, besides certain sums to be paid as counsel fees to her attorneys and counsel, and the costs of the action. The plaintiff herein appeared in said suit by attorney. He has not paid the alimony required to be paid by this decree.

Thereafter the plaintiff removed his residence to New York, the defendant continuing to reside in Washington, and he now brings this action for annulment of the marriage, and seeks to obtain jurisdiction of the defendant by personal service without the state under the order of publication above mentioned.

The defendant's domicile is not in this state. Since the decree of separation, at all events, she was free to have a separate domicile from her husband, and her domicile did not follow him to New York when he removed here. She owes no allegiance, actual or constructive, to the laws of this state. The question which presents itself, therefore, is whether our courts under existing statutes have jurisdiction of a suit for annulment when the defendant is a non-resident, and is served by constructive service only, and when, further, the marriage did not take place within the state.

It needs no citation of authority to show that the policy of our law for many years has been to treat matrimonial actions as actions *in personam,* to the extent that our courts would not recognize as binding in this state a decree of divorce rendered in another state or jurisdiction upon constructive service of process unless the defendant were domiciled in the state or jurisdicion in which the decree was rendered, or appeared in the action. Most of the other states do not adhere to this rule, and it has been overborne

by the Federal Supreme Court in *Atherton* v. *Atherton,* 181 U. S. 155, to the extent that where the matrimonial domicile has been established in one of the states, and the parties there separate, one going to another state, the party who remains in the state of matrimonial domicile may there maintain an action and obtain a decree of divorce upon constructive service, which will be binding in all other states under the " full faith and credit " clause of the Federal Constitution. But in the later case of *Haddock* v. *Haddock,* 201 U. S. 562, the Supreme Court made it clear that the doctrine of the *Atherton* case did not apply where the suit was not brought in the state of the matrimonial domicile.

From this it follows that a judgment of annulment rendered in the present action on the service heretofore made would not be entitled to recognition in any other state under the " full faith and credit " clause, although the courts of other states might, of course, recognize it, if it were in accord with their local policy and laws to do so. And, on the other hand, if such a judgment were to be rendered under similar circumstances in another state, it would not be entitled to, and could not receive, recognition by the courts of this state, at least not as against a resident of this state at the time it was rendered. Whether the rule may be invoked by a non-resident is not fully settled. See *Kaufman* v. *Kaufman,* 177 App. Div. 162, 184, and *Matter of Caltabellotta,* 183 id. 753, 757. To grant a judgment, therefore, in favor of the plaintiff would be plainly inconsistent with our whole theory of the nature of matrimonial actions as actions *in personam,* and would amount to declaring that such an action, when brought in this state against a non-resident defendant served by constructive service, is to be treated as in the nature of an action *in rem,* but

when brought in another state under like circumstances it is to be regarded as an action *in personam.*

I do not question the power of the legislature, despite the inconsistency above mentioned, to authorize our courts to determine the marital status of all persons residing in the state, so far as this state is concerned, leaving it to other jurisdictions to recognize or reject our judgments in such actions rendered on constructive service against non-resident defendants, as such jurisdiction may decide. But it is well settled that a statute should not be construed to authorize the rendition of judgments not entitled to extra-territorial recognition unless that is the plain import thereof.

With these general principles in mind, I proceed to examine the statutory provisions relating to the jurisdiction of our courts of actions for annulment. They are contained in sections 1742 to 1755 of the Civil Code. It will be found that although the Code prescribes the several grounds upon which a judgment of annulment may be granted, it contains no other provisions whatever relative to jurisdiction, such, for example, as the provisions in regard to the place of marriage, or residence of the parties in actions for divorce, or residence in case of separation.

Does this absence of statutory provisions indicate an intention on the part of the legislature to open the doors of our courts in annulment actions to all comers, regardless of the residence of the parties and personal service of process, or are we to take the legislative intent to have been merely to prescribe the grounds for annulment, leaving the ordinary common-law rules as to jurisdiction dependent upon residence and service of process to operate? For the reasons already stated, I adopt the latter construction. Treating the action as an action *in personam,* the court

should not grant a judgment affecting the personal status of a non-resident, unless such defendant is personally served with process in the action within the limits of our jurisdiction or voluntarily appears therein, thus submitting to the judgment of the court. As was said by Judge O'Brien in *Gray* v. *Gray,* 143 N. Y. 354, an action for divorce: " The general rule to be derived from principles of universal application is that the courts of this state have no power to adjudge the status of parties residing beyond its jurisdiction. It is not likely that this rule was changed or intended to be changed by the provisions of the Code."

In *Barber* v. *Barber,* 89 Misc. Rep. 519, it was held that in an action for divorce, although the parties had been married within the state, the court had no power to divorce them, notwithstanding the Code provision (see § 1756, subd. 2), where neither party resided in the state at the commencement of the action.

I am aware that the Appellate Division in the first department in *Becker* v. *Becker,* 58 App. Div. 374, has laid down a different rule from that above stated. In that case, however, the marriage took place within this state, which is not the case here, and both parties to the marriage were non-residents at the time the action was begun. This decision is not binding upon me, and I do not consider it as one that, on account of the force of its reasoning, ought to be followed. In the absence of express legislative enactment, I hold that the courts of this state cannot, by constructive service of process, obtain jurisdiction of a non-resident defendant so as to pronounce against such defendant a valid judgment of annulment where the marriage did not take place in this state.

The plaintiff is not aided in this respect by the provision of the Code (§ 438, subd. 4) authorizing an

Supreme Court, June, 1919. [Vol. 107.

order of publication in an action for the annulment of marriage, for that provision is auxiliary only to the general jurisdictional provisions already referred to, and cannot be deemed to have been intended to extend their scope.

What I have said does not, of course, apply to divorce, for there are express statutory provisions authorizing the maintenance of divorce actions against non-residents, and the same to a certain extent is true of actions for separation.

The motion to set aside the order of publication and the service of the summons personally without the state thereunder is granted, with ten dollars costs.

Motion granted, with ten dollars costs.