## MATTER OF MA

### In Visa Petition Proceedings

### A–19855000

*Decided by Board August 13, 1974*

Petitioner sought classification for the beneficiary as the unmarried son of a lawful permanent resident, under section 203(a)(2) of the Immigration and Nationality Act. In order to so qualify beneficiary must show that he is unmarried. However, beneficiary who was in Korea had married another Korean, who resided in Argentina by proxy, and this marriage was reported in the family register on June 25, 1968. One argument was that this marriage was not valid, however, the district director found it valid. Beneficiary attempted to divorce his wife by singing a Statement of Divorce at the Korean Consulate in Honolulu, Hawaii, which was transmitted by the Korean Consul General to the Family Registration Office in Seoul, Korea, where it was recorded on September 4, 1971 in the beneficiary's family register. This divorce will not be recognized for immigration purposes because neither party was personally present in Korea at the time the divorce was sought, nor did it appear that either party was domiciled in Korea at that time, or at any time during their married life. Thus, since the divorce is not valid for immigration purposes, beneficiary cannot qualify as the unmarried son of a lawful permanent resident, and he is not eligible for second preference classification.

ON BEHALF OF PETITIONER:
  Elmer E. Poston, Esquire
  770 Kapio'ani Boulevard
  Honolulu, Hawaii 96813

The alien beneficiary is a native and citizen of the Republic of Korea. His family register has been submitted in support of the petitioner's application. The family register indicates that the beneficiary is the son of the petitioner, that he was married to Kum Son Pak, and that the marriage was reported on June 25, 1968.

Counsel for the petitioner asserts in his brief that, despite the entry in the family register, the beneficiary was not actually married, because the customary ceremony did not take place before the entry was made. In fact, he says it was a proxy marriage, since at the time of the marriage the beneficiary's "wife" was in Argentina, where she had been living since 1965. The customary Korean ceremony was held in Argentina on February 3, 1970. Counsel asserts that because this marriage was not performed or recorded in accordance with Argentine law, and because it was not subsequently reported in Korea, the marriage was

invalid. The District Director concluded that the marriage was indeed valid because it was reported in the family register on June 25, 1968.

The validity of a marriage, for immigration purposes, is governed by the law of the place of celebration, *Loughran* v. *Loughran*, 292 U.S. 216, 223 (1934); *Matter of Levine*, 13 I. & N. Dec. 244 (BIA 1969); *Matter of P—*, 4 I. & N. Dec. 610 (A.G. 1952). We have received a memorandum from the Far Eastern Law Division of the Law Library of the Library of Congress entitled Valid Marriage under the Law of the Republic of Korea. See Appendix A. We do not see anything in the Korean law which directs that a ceremony other than the witnessed signing of the marriage agreement precede notification of the Family Registrar. Subsequent notification is all that is required for the agreement to take effect. Whether or not this was a proxy marriage is irrelevant to the issues in this case. We find that the marriage was valid according to Korean law. Therefore, for the beneficiary to be eligible for the benefit which the petitioner seeks on his behalf, the beneficiary's divorce from Kum Son Pak must also be valid.

### CONCERNING THE VALIDITY OF THE BENEFICIARY'S DIVORCE

In cases where a marriage follows a divorce, we look at the prior divorce in light of the law of the state of celebration of the subsequent marriage for the purpose of determining whether or not that state will recognize the validity of the divorce, *Loughran* v. *Loughran*, supra; *Matter of Levine*, supra; *Matter of P—*, supra. In this case, however, there is no subsequent marriage. Consequently we must decide whether or not the divorce in question should be recognized on the basis of comity without any one state's law as a reference point.

Certainly, the law of the state granting the divorce must be complied with, regardless of any additional requirements we may impose; for if the divorce is invalid there, it is invalid everywhere.

According to the brief of counsel for the petitioner, Kum Son Pak, whose immigration status is not in the record, and the beneficiary, who was in the United States as a nonimmigrant visitor, went to the Korean Consulate in Honolulu, Hawaii on July 6, 1971. There, they and two witnesses signed a Statement of Divorce. This document was transmitted by the Consul General to the Census (or Family) Registration Office in Seoul, Korea, where it was received and evidently recorded on September 4, 1971 in the beneficiary's family register.

We have consulted another memorandum prepared by the Far Eastern Law Division of the Law Library of the Library of Congress, this one entitled Divorce by Mutual Consent Between Korean Citizens Abroad. See Appendix B. As is pointed out in this memorandum, the cited law is silent on the question of its applicability to a divorce by mutual consent when both parties, Korean nationals, are abroad. How-

71

ever, the Family Registration Practice Manual of 1970, which was compiled by three government officials in charge of family registration affairs in the Court Administration Office, indicates that Article 814 of the Civil Code and Article 39 of the Family Registration Law "are construed to be applicable to a divorce by mutual consent between Korean citizens residing in a foreign country . . . ." (Appendix B, infra at _____.) Thus it seems to us that, according to Korean law and practice, this divorce would be recognized as valid in the Republic of Korea, where it became effective when registered on September 4, 1971.

Having established that the divorce was valid where obtained, we nevertheless find that it is invalid in the United States for purposes of the immigration law.

Neither party to this divorce was physically present in Korea at the time the divorce was sought. Nor does it appear that either was domiciled there at that time or at any time during their married life. Kum Son Pak had not lived in Korea for six years, and her family was in Argentina. The beneficiary had not been in Korea since 1970. The present visa petition, filed in his behalf shortly after the divorce became final, evidences his intent to live in the United States.

In the few American cases in which state courts have recognized foreign divorces obtained by absentee nondomiciliaries of the divorcing jurisdiction, *Oettgen* v. *Oettgen,* 94 N.Y.S. 2d 168, 196 Misc. 937 (1949); *Gonzalez* v. *Gonzalez,* 46 N.Y.S. 270 (1943 Sup.); *Hansen* v. *Hansen,* 8 N.Y.S. 2d 655, 255 App. Div. 1016 (1938), certain other important contacts with the divorcing jurisdiction were established. They are: (1) the parties were married in the jurisdiction where they were subsequently divorced; (2) they lived in that jurisdiction as husband and wife for a period of time; (3) although they were not personally before the divorcing court or even within the jurisdiction at the time of the divorce, both parties had notice of the action and either appeared by counsel or consented to personal jurisdiction; and (4) in the *Hansen* and *Oettgen* cases, and doubtless in *Gonzalez* as well, both parties to the divorce were citizens of the country granting the divorce.

In the present case, both parties to the divorce were citizens of Korea. They both participated in and consented to the divorce. We have found that they were married in Korea. However, they were never domiciled together as husband and wife in Korea. We have found no American cases recognizing foreign divorces where neither party was either domiciled or physically present in the divorcing jurisdiction when the action was commenced and where the couple never lived as husband and wife in the divorcing jurisdiction. Consequently, it is our opinion that no state would give extraterritorial effect to the beneficiary's divorce, and therefore we do not recognize his divorce as valid for immigration purposes.

Since the beneficiary does not qualify as the unmarried son of the petitioner, he is not eligible for the second preference status he seeks. Accordingly, the following order will be entered.

ORDER: The appeal is dismissed.

## APPENDIX "A"

### VALID MARRIAGE UNDER THE LAW OF THE REPUBLIC OF KOREA

The laws governing marriage in the Republic of Korea are the Civil Code of 1960 [1] and the Family Registration Law [2] of the same year. In addition to fulfilling the substance requisite of marriage,[3] a valid marriage must be registered with the Family Registrar as set forth in Articles 812 and 814 of the Civil Code:

Article 812. 1. A marriage becomes effective by notification thereof in accordance with the provisions of the Family Registration Law.

2. The notification mentioned in the preceding paragraph shall be made in writing with the joint signature of both parties and two witnesses who are of legal age.

Article 814. 1. The notification of a marriage between Korean nationals who are in a foreign country may be submitted to the Korean Ambassador, Minister or Consul stationed in that country.

2. The Ambassador, Minister or Consul who has received the notification mentioned in the preceding paragraph shall transmit it [including any other documents attached thereto] to the Family Registrar of home country without delay.

The pertinent provisions of the Family Registration Law provide:

Article 77. The notification of a marriage shall be made in the domicile or district in which the husband resides.

Article 39. Any Korean who is in the territory of a foreign country may submit notification or request in accordance with the provisions of this Law, to the chief of the Korean diplomatic and consular office in that country which has the jurisdiction over the district [in which such person resides].

Article 41. The chief of the Korean diplomatic and consular office who has received papers in accordance with the provisions of the preceding two articles shall, within one month, send them through the Minister of Foreign Affairs to the city mayor, town headman or village headman, courts, or other government agencies having jurisdiction over the domicile of such person.

Professor Chu-su Kim fully describes the subject of a valid marriage in the following terms:

Under the old Korean customary law, a marriage ceremony constituted a valid marriage, and even without such a ceremony, the cohabitation of husband and wife was also recognized as a valid marriage. Upon the coming into force of the revised Ordinance concerning Korean Civil Affairs in 1922 during the Japanese Occupation, however, registration of marriage became the only form of legally valid marriage. For that

---

[1] Law No. 471, promulgated on February 22, 1956; effective January 1, 1960, as amended by Law No. 1668, December 31, 1964.

[2] Law No. 535, January 1, 1960.

[3] Articles 807 to 811 of the Civil Code (age, capacity, etc.).

73

matter, the new Korean Civil Code of 1960 remains unchanged (Article 812). In spite of the fact that other substantive requirements (such as age, race, health of parties, etc.) are satisfied, without the procedural requirement of the marriage registration on a piece of paper, [the union] is regarded only as a *de facto* marriage, no matter how long they may have lived together. . . . This situation has been a target of severe criticism.[4]

Thus, the law applicable in the Republic of Korea does not consider a marriage valid until registration has been made with the competent authority.

It should be noted that under the Civil Code or the Family Registration Law, there is no provision for "proxy notification" of a marriage. On this subject, Professor Kim is of the opinion that "although the notification of a marriage by proxy is not permissible under Korean law . . . the notification bearing the joint signature of both parties and two witnesses may be sent to the Family Registrar by mail or by an authorized third person." [5] According to Professor Kim, the notification of a marriage between Korean nationals abroad may also be sent by mail to the Family Registrar in Korea having jurisdiction over the husband's domicile.[6]

## APPENDIX "B"
### DIVORCE BY MUTUAL CONSENT BETWEEN KOREAN CITIZENS ABROAD

The law concerning divorce by mutual consent in the Republic of Korea are the Civil Code [1] and the Family Registration Law.[2] The pertinent provisions of the Code are as follows:

*Article 834.* Husband and wife may effect divorce by agreement.

*Article 836.* 1. A divorce by agreement becomes effective by notification thereof in accordance with the provisions of the Family Registration Law.

2. The notification mentioned in the preceding paragraph must be filed in writing with the signatures of both parties and two witnesses of full age.

The pertinent provisions of the Family Registration Law provide:

*Article 25.* Notification shall be given in the domicile or residence of the notifier or in the district in which he presently resides.

---

[4] Chu-su Kim, *Sin hoinpŏp yŏnku* [Study of the New Marriage Law], Seoul, The Korean Research Center, 1958, p. 21.

[5] Chu-su Kim, *Chusŏk ch'inzok snagsŏkpŏp* [Commentary on the Law of Relatives and Succession], Seoul, Pŏmmunsa, 1969, p. 139.

[6] *Ibid.,* p. 144.
Prepared by
Sung Yoon Cho
Senior Legal Specialist
Far Eastern Law Division
Law Library, Library of Congress
July 1972

---

[1] Law No. 471, February 22, 1958; came into force on January 1, 1960, as amended by Law No. 1668, December 31, 1964.

[2] Law No. 535 January 1, 1960, as amended by Law No. 1377, July 31, 1963.

74

*Article 39.* Any Korean who is in the territory of a foreign country may submit notification or request in accordance with the provisions of this Law, to the chief of the Korean diplomatic and consular office in that country which has the jurisdiction over the district [in which such person resides].

*Article 40.* 1. If any Korean in a foreign country has had a document executed in respect to a matter to be notified in accordance with the established form of that country, he shall, within one month, present a copy of such document to the chief of the Korean diplomatic and consular office.

2. If no Korean diplomatic and consular office exists in that country, a copy of such document shall, within one month, be sent to the city mayor, town headman or village headman within whose administrative district such person has been domiciled.

*Article 41.* The chief of the Korean diplomatic and consular office who has received papers in accordance with the provisions of the preceding two articles shall, within one month, send them through the Minister of Foreign Affairs to the city mayor, town headman or village headman, courts, or other government agencies having jurisdiction over the domicile of such person.

*Article 79.* 2. The notification of divorce by agreement shall not be accepted unless its truth and correctness has been affirmed.

As noted above, both the Civil Code and Family Registration Law authorize married couples to divorce themselves in Korea by registering their signed divorce agreement at the proper Family Registration Office with no other court action being required. However, the above two laws are silent on the question of whether or not these laws are applicable to a divorce by mutual consent between Korean nationals abroad. In the absence of the specific provisions under the above laws, the Family Registration Practice Manual of 1970, compiled by three government officials in charge of family registration affairs in the Court Administration Office states:

> ... nevertheless, Article 814 of the Civil Code [3] concerning the notification of a marriage between Korean nationals abroad, as well as Article 39 of the Family Registration Law, are construed to be applicable to a divorce by mutual consent between Korean citizens residing in a foreign country. It is further construed that the notification of such divorce should be given to the Korean diplomatic and consular office having jurisdiction over the parties even though the divorce is not secured in a manner permissible by a particular foreign country. [4]

Another manual written in 1970 by a Korean law professor and an official of the Court Administration Office states further that "in accepting the notification of divorce by agreement, the consular officer is

---

[3] Article 814 of the Civil Code provides: 1. "The notification of a marriage between Korean nationals who are in the territory of a foreign country may be submitted to the Korean Ambassador, Minister, or a Korean consul stationed in that country." 2. "The Ambassador, Minister, or a consul who has received the notification mentioned in the preceding paragraph shall, without delay, forward the same to the proper Family Registration Office of the home country."

[4] Ch'oe Su-in and others, *Hangul hochŏk silmu ch'ŏngso* [Family Registration Practice Manual in Korean Characters], Seoul, Pobchong Ch'ulp'ansa, 1970, p. 128.

required to verify the truth and correctness of the papers before him by virtue of Article 79-2 of the Family Registration Law." [5]

Professor Kim Chu-su elaborates further on this subject in his commentary on the Law of Relatives and Succession by saying that:

> In cases where there exists no Korean diplomatic and consular office in a foreign country, the notification of divorce, and a notorized statement proving the existence of the intention to divorce between both parties, may be directly sent to the proper Registration Office having jurisdiction over the husband's domicile [Article 40, paragraph 2 of the Family Registration Law]. In a foreign country like Japan where divorce by agreement is permitted, however, the parties to a divorce should apply to a Japanese Government agency for the issuance of a document certifying the validity of such divorce; the certified document then should be forwarded to the Korean consular office in Japan or directly to the competent Registration Office in Korea having jurisdiction over the husband's domicile [Article 40, paragraph 1 of the Family Registration Law]. [6]

So far as we are able to ascertain from the Law Library's collection, neither official legal opinions expressed by the Minister of Justice on this subject nor administrative directives issued by the Minister of Foreign Affairs has been reported. This was reaffirmed by a telephone conversation with the Consul General in the Korean Embassy, Washington, D. C. [7]

---

[5] Kim Chu-su and Pak Ch'ŏn-sik, *Kaeiŏng hangul hochŏk silmu chŏnsō* [Revised Family Registration Practice Manual in Korean Characters], Seoul, Hanguk Sabŏp Haengchŏng Hakhoe, 1970, p. 240–250.

[6] Kim Chu-su, *Chusok ch'inzok sangsokpŏp* [Commentary on the Law of Relatives and Succession], Seoul, Pommunsa, 1969, p. 217.

[7] In the absence of any administrative guidance from the superior officer, the Consul General in Washington indicated that day-to-day handlings of cases involving domestic relations are based on the above two manuals. Telephone conversations were exchanged with Sung Kwoo Kim, Consul General in Washington on August 27, 1971.